In the Matter of the Appraisal of the Estate of JOHN P. MOEBUS, Deceased, under the Acts in Relation to the Taxable Transfers of Property.

HELENA CAROLINE WILSON and JOHN HENRY MOEBUS, as Executors, etc., of JOHN P. MOEBUS, Deceased, and HELENA CAROLINE MOEBUS, Individually, Appellants; THE COMPTROLLER OF THE STATE OF NEW YORK, Respondent.

Second Department, June 22, 1917.

**Tax — transfer tax — money and mortgages held jointly by husband and wife — estates by entirety — constitutional law — Tax Law, section 220, subdivision 7, taxing vested estates by the entirety.**

Where moneys on deposit and mortgages are held in the joint names of husband and wife only the half interest should be taxed under section 220 of the Tax Law upon the death of the husband.

Subdivision 7, section 220 of the Tax Law, as amended, authorizing the taxation of estates by the entirety which at the enactment of said statute had already vested, is constitutional.

A surviving tenant by the entirety in this State acquires an interest taxable under said provision of the Tax Law, at one-half the value of the lands.

The same rule holds as to lands subject to a contract of sale, and also as to personal property held jointly.

APPEAL by Helena Caroline Wilson, individually and as executrix, and another, from an order of the Surrogate's Court of the county of Westchester, entered in the office of said Surrogate's Court on the 20th day of April, 1917, confirming a previous order fixing the transfer tax herein.

Mr. John P. Moebus died July 23, 1916, leaving personal property held jointly with his wife — a checking account in both names in the Mount Vernon Trust Company, and eight mortgages running to both the husband and wife. They also held land at Mount Vernon, as tenants by the entirety, valued at $10,300. Other land at Yonkers had been thus held, but when Mr. Moebus died there was outstanding a written contract of May second, which covenanted to give the purchaser a conveyance of same on or before May 1, 1917, at a net price of $5,300.

Section 220, subdivision 7, of the Tax Law (Consol. Laws,

chap. 60 [Laws of 1909, chap. 62], added by Laws of 1915, chap. 664), as amended by Laws of 1916, chapter 323, which took effect April 26, 1916, is as follows:

"Whenever property is held in the joint names of two or more persons, or as tenants by the entirety, or is deposited in banks or other institutions or depositaries in the joint names of two or more persons and payable to either or the survivor, upon the death of one of such persons the right of the surviving tenant by the entirety, joint tenant or joint tenants, person or persons, to the immediate ownership or possession and enjoyment of such property shall be deemed a transfer taxable under the provisions of this chapter in the same manner as though the whole property to which such transfer relates belonged absolutely to the deceased tenant by the entirety, joint tenant or joint depositor and had been bequeathed to the surviving tenant by the entirety, joint tenant or joint tenants, person or persons, by such deceased tenant by the entirety, joint tenant or joint depositor by will."

The appraiser treated all the following joint items, both realty and personalty, as taxable at their full amounts:

| | |
|---|---:|
| Mortgages | $46,428 44 |
| Cash in Mount Vernon Trust Co | 2,783 45 |
| Land as tenants by the entirety | 10,300 00 |
| Total | $59,511 89 |

All the above had vested in the husband and wife before April 26, 1916, the date of this statute. The Surrogate's Court confirmed a valuation of the whole estate, after proper deductions, at $77,403.66, upon which was computed a tax of $1,198.07. Besides questioning the interpretation of this provision of the Tax Law, appellants contest the constitutional power to tax estates by the entirety which at the enactment of such statute had already vested.

*Arthur M. Johnson,* for the appellants.

*Francis A. Winslow* [*G. Henry Mahlstedt* with him on the brief], for the respondent.

PUTNAM, J.:

As to the moneys and mortgages held in the joint names only, the half interest should be taxed instead of the full amount, as now appraised. (*Matter of McKelway*, 221 N. Y. 15.)

As to land held by the entirety, we must refer the State's power to tax to "the principle that death is the generating source from which the particular taxing power takes its being and that it is the power to transmit, or the transmission from the dead to the living, on which such taxes are more immediately rested." (*Knowlton* v. *Moore*, 178 U. S. 41, 56.) Where such a tax is laid on all which passes by the "laws regulating intestate succession," an estate by the entirety passed to the survivor free of such tax, since the survivor's title is not acquired by intestate succession, but by reason of the nature of the estate. (*Palmer* v. *Treasurer & Receiver General*, 222 Mass. 263, 265.)

The New York act of 1916 was carefully drawn so as to cover such estates by name and by statement of their characteristics. The Legislature has thus expressed its intent by unmistakable words. I cannot follow the argument that such legislation would impose a retroactive tax, since it is the death from which the succession (if there be a legal succession) is derived. The statute applies to estates *in præsenti*, and I see no difficulty in upholding such a taxing power. For illustration, the joint deposit in *Matter of McKelway* (*supra*) had been made in November, 1913, two years before the statute imposing the tax.

The Legislature did not ignore the joint interest, by attempting, on the death of one, to tax both halves of the joint fund or estate. For taxation purposes, the survivor's right to immediate ownership realizable by death of the other owner, is to be deemed a taxable transfer " in the same manner as though the whole property *to which such transfer relates* belonged absolutely to the deceased," who had bequeathed it to the survivor. The act relates this devolution of interest wholly to the death, so as to cut off any contention that such survivorship was but an incident of the original creation of such joint estates. This was within the law-making power, since it only reaches and taxes the *jus accrescendi* arising from death.

Hence we are brought to the final inquiry, Does the surviving tenant by the entirety in the State of New York acquire an interest that is taxable? Speaking of such estates with their original incidents, unaffected by the later statutes, it has been accurately said of such tenants: " Death separated them, and the survivor still held the whole because he or she had always been seized of the whole, and the person who died had no estate which was descendible or devisable." (*Stelz* v. *Shreck*, 128 N. Y. 263.)

Notwithstanding this original peculiarity of title, the use and enjoyment now does undergo a decided change by the death of one spouse. By common law, the husband during coverture had the sole use or profits of this estate. But by reason of the married woman's property acts in New York, each has now equal rights in the rents and profits, so long as the question of survivorship is in abeyance. (*Hiles* v. *Fisher*, 144 N. Y. 306; *Grosser* v. *City of Rochester*, 148 id. 235. See, also, *Kip* v. *Kip*, 33 N. J. Eq. 213.) The old idea that this estate is a unit made up of indivisible parts (*Stuckey* v. *Keefe's Excrs.*, 26 Penn. St. 397, 399) is no longer true in New York. As to income its unity is gone. Indeed, the term "entirety" has become inexact and perhaps misleading.

With such a succession from the dead to the survivor as to one-half of the profits — and profits represent the land's usable value — it would seem strange if that succession could not be taxed.

Where a joint bank deposit was in question in case of a husband's death in 1913, the court held such a joint tenancy not taxable under the language of that earlier statute, since such property thus disposed of is not " made in contemplation of * * * death," nor "intended to take effect in possession or enjoyment at or after such death." (Tax Law, § 220, as amd. by Laws of 1911, chap. 732.) Mr. Justice WOODWARD, however, added: " If the Legislature deems such dispositions of property to be properly taxable that is a question which may be dealt with in the proper department, but this court has no power to enlarge upon the scheme of tax laws. (See *Matter of Starbuck*, 137 App. Div. 866; *Matter of Green*, 144 id. 232–234, and authorities cited.) " (*Matter of Tilley*, 166 App. Div. 240, 243.)

In *Matter of Klatzl* (216 N. Y. 83) the death was in 1913. In 1906 Klatzl had deeded a property in New York to himself and wife as " tenants of the entirety," which the surrogate held effective. The Court of Appeals (reversing the surrogate and Appellate Division [166 App. Div. 921]), however, held the property taxable to one-half of its value, as, in the majority view, the conveyance created only a tenancy in common. Judge BARTLETT concurred in the result, on the express ground that, even as tenants by the entirety, one undivided half of the profits to which the husband had been entitled during his life passed into the wife's possession by the husband's death (p. 89).

Estates by the entirety, if wholly escaping the transfer tax, would be easily resorted to as a means to put valuable lands beyond taxation. This is a period when the taxing power is in full exercise, and seems to be required for the general welfare. The Legislature has clearly enlarged the statute so as to include the succession by survivorship to an estate by the entirety. Hence I advise to tax the lands held as tenants by the entirety (both strictly such, and the Yonkers land under contract of sale) for *one-half* their value. This also applies to the joint personalty, with the result that the value of the joint interest, appraised at $64,811.89, should be halved, namely, $32,405.95, and as thus modified the order of the Surrogate's Court of Westchester county should be affirmed, without costs of this appeal.

JENKS, P. J., THOMAS, STAPLETON and BLACKMAR, JJ., concurred.

Order of the Surrogate's Court of Westchester county modified in accordance with opinion, and as modified affirmed, without costs of this appeal.