APPEAL OF HANNAH M. SPOFFORD, ADMINISTRATRIX OF THE ESTATE OF LUCY M. MILLS, DECEASED.

Docket No. 1028.     Submitted August 1, 1925.     Decided March 10, 1926.

1. Certain transfers of real and personal property *held* not to have been made in contemplation of death.
2. The Commissioner's determination that a transfer of certain bonds was intended to take effect in possession or enjoyment at or after death approved.
3. The provisions of section 402 (d) of the Revenue Act of 1918 are not retroactive.

*Walter K. Lincoln* and *George V. McIntyre, Esqs.*, for the taxpayer.

*John F. Greaney, Esq.*, for the Commissioner.

Before LITTLETON, SMITH, and TRUSSELL.

This appeal is from the determination of a deficiency in respect of estate tax in the amount of $54,687.18, arising from the inclusion in the decedent's gross estate, under the provisions of section 402 (c) and (d) of the Revenue Act of 1918, of the value of certain real estate and personal property of which she made transfers, and of certain real estate in which she, at her death, held an interest as a joint tenant.

FINDINGS OF FACT.

Lucy M. Mills died intestate, at the age of 78, on September 18, 1919, a resident of Chicago, Ill., leaving as her only heir-at-law a sister, Hannah M. Spofford, who was appointed administratrix of her estate.

Lucy M. Mills was a woman of wealth on or prior to April 7, 1916, and owned, in addition to other property, an undivided one-half interest in certain real estate situated in Chicago, as a tenant in common with her sister, Hannah M. Spofford, who owned the other undivided one-half interest therein, the same being their family inheritance. Each was also owner of a residence in Chicago. Hannah M. Spofford was a widow, having one child living, Florence M. Spofford, a spinster of about 40 years of age, and two grandchildren, children of her deceased son. Lucy M. Mills was also a widow and about 78 years of age, without issue living.

In the early part of 1916 a number of family conferences were had between the decedent, her sister, Hannah M. Spofford, and her niece, Florence M. Spofford, with the view of arranging for the disposition of the real estate which was held by Lucy M. Mills and Hannah M. Spofford as tenants in common. As a result it was agreed that Hannah M. Spofford would place her residence and undivided one-half interest in the real estate held by her and Lucy M. Mills as tenants in common in joint tenancy with Florence M. Spofford; that Lucy M. Mills would place in joint tenancy with Florence M. Spofford her residence and undivided one-half interest in the real estate mentioned; and that Hannah M. Spofford and Lucy M. Mills would execute wills giving to each other their respective properties; also that Florence M. Spofford would not marry during the life of Lucy M. Mills.

In order to carry out the agreement, Lucy M. Mills and Hannah M. Spofford requested Charles E. Morrison, a relative, to take title to the real estate referred to and to give back to them and Florence M. Spofford joint tenancy deeds in accordance with their agreement. Thereupon, in company with Morrison, they consulted an attorney in regard to the transfer of the real estate and the preparation of the wills, and acordingly retained him to prepare the deeds and wills for execution.

Several weeks were spent by the attorney in the preparation of the deeds and wills, and a number of conferences were held with them relative thereto. About the time they were ready to be executed Lucy M. Mills became ill with heart trouble and the signing of the papers had to be postponed. On April 7, 1916, however, she had recovered to such an extent that, on that day, at her request, the attorney and Morrison went to her house, taking with them the deed and will for her to execute. On that date she executed the deed conveying to Morrison her residence and her undivided interest in the real estate held by her as tenant in common with Hannah M. Spofford. At the same time, or shortly thereafter, she also signed the will (which was witnessed), in which, after making certain bequests, she devised all the remainder of her estate to Hannah M.

Spofford and Florence M. Spofford, share and share alike, the entire remainder, however, to go to Florence M. Spofford in the event that Hannah M. Spofford should not survive Lucy M. Mills. On April 7, 1916, Hannah M. Spofford also conveyed to Morrison her residence and her undivided half interest in the real estate held by her and Lucy M. Mills as tenants in common. On April 21, 1916, she executed a will in which, after making certain bequests, she gave to her daughter, Florence M. Spofford, and Lucy M. Mills all the remainder of her estate, the entire remainder to go, however, to Florence M. Spofford in the event Lucy M. Mills should not survive the testatrix.

On April 8, 1916, Morrison conveyed to Lucy M. Mills and Florence M. Spofford, as joint tenants, the real estate that had been conveyed to him by Lucy M. Mills, and, on the same day, he conveyed to Hannah M. Spofford and Florence M. Spofford the real estate that had been conveyed to him by Hannah M. Spofford. The property transferred by Morrison to Lucy M. Mills and Florence M. Spofford, with the exception of the residence occupied by Lucy M. Mills, consisted of income-producing real estate.

In connection with the transaction relating to the disposition of property herein detailed, Florence M. Spofford made a will in which she devised her estate to her mother and Lucy M. Mills, and Lucy M. Mills transferred, *inter vivos*, to Florence M. Spofford bonds of the value of $130,000. The bonds were returned as a part of decedent's estate under the inheritance tax laws of the State of Illinois.

Lucy M. Mills was apparently in good health at the time the various transfers of property were considered and agreed to. She was capable of managing and did manage her own affairs, had numerous conferences with her attorney relative thereto, and gave him directions as to what should be included in the various documents which he prepared. A short time prior to April 7, 1916, she was seized with a heart attack and was ill for several weeks. She recovered, however, and was able thereafter to leave Chicago to visit various cities, as well as to look after herself and her property. About one year before her death she met with an accident resulting in two of her ribs being broken. She quickly recovered, however, from the effects of this accident and lived until September 18, 1919.

Whether the decedent destroyed the will which she signed about April 7, 1916, is not known, but no will was found after her death and the estate was administered under the intestate laws.

The Commissioner included as a part of the gross estate of the decedent the value, at her death, of the real estate transferred by her to Morrison on April 7, 1916, and transferred by him on April 8, 1916, to the decedent and Florence M. Spofford as joint tenants;

also the value at the time of her death of the bonds transferred by her to Florence M. Spofford about April 8, 1916.

OPINION.

LITTLETON : The issue presented by this appeal is whether the Commissioner erred in including in the gross estate of Lucy M. Mills the value at the time of her death of the bonds transferred by her to Florence M. Spofford on or about April 8, 1916, and of the real estate, a joint interest in which she transferred to Florence M. Spofford and which she and Florence M. Spofford held as joint tenants at the time of her death.

The Commissioner contends that the transfers of both the bonds and the real estate were made in contemplation of death, and that the transfer of the bonds was not made absolutely and without reservation of income, but was intended to take effect in possession or enjoyment at or after the death of Lucy M. Mills. He further contends that, if the transfer of real estate was not made in contemplation of death, the value thereof at the time of her death should, nevertheless, be included in the gross estate of the decedent under section 402 (d) of the Revenue Act of 1918.

The tax involved herein arises under section 402 of the Revenue Act of 1918, which provides—

That the value of the gross estate of the decedent shall be determined by including the value at the time of his death of all property, real or personal, tangible or intangible, wherever situated—

*       *       *       *       *       *       *

(c) To the extent of any interest therein of which the decedent has at any time made a transfer, or with respect to which he has at any time created a trust, in contemplation of or intended to take effect in possession or enjoyment at or after his death (whether such transfer or trust is made or created before or after the passage of this Act), except in case of a bona fide sale for a fair consideration in money or money's worth. Any transfer of a material part of his property in the nature of a final disposition or distribution thereof, made by the decedent within two years prior to his death without such a consideration, shall, unless shown to the contrary, be deemed to have been made in contemplation of death within the meaning of this title;

(d) To the extent of the interest therein held jointly or as tenants in the entirety by the decedent and any other person, or deposited in banks or other institutions in their joint names and payable to either or the survivor, except such part thereof as may be shown to have originally belonged to such other person and never to have belonged to the decedent.

The transfers which give rise to the issue here involved were not made within two years of the death of Lucy M. Mills, and there is no legal presumption that they were made in contemplation of death. Whether they were so made is therefore purely a question of fact to be determined from the evidence.

"Contemplation of death," as used in the statute, is an apprehension of death within the reasonably near future, arising from some existing bodily condition, and not the general expectation of death entertained by everyone. Contemplation of death must be the motive prompting the transfer of property in order to subject the transfer of property to the tax. *Appeal of Philip T. Starck*, 3 B. T. A. 514.

The Board is of the opinion from the evidence produced in this appeal that the real estate transferred by the decedent to her neice, through Morrison, on April 7 and 8, 1916, and the transfer of the $130,000 of bonds on the latter date, were not made in contemplation of death within the meaning of the law. These transfers were made pursuant to an arrangement that had been entered into by Lucy M. Mills, her sister, and her niece several weeks prior thereto. Lucy M. Mills was at that time in good health and capable of managing her own affairs, which she did manage, and there is no evidence to show that she then believed, or had reason to believe, that she had any bodily infirmity that might cause her death within the reasonably near future. On the other hand, the evidence shows that she had reason to believe she might live for many years. It is true that between the time the transfers were agreed to and the time they were executed she suffered a heart attack, and that she was recovering from that attack when the transfers were made. Her illness, however, had nothing to do with the transfers, except to delay their execution. They were not made on account of her illness, and they would have been made even if the illness had not occurred, and at an earlier date. The illness of Lucy M. Mills was not of long duration, for she recovered therefrom and lived for more than three years thereafter, leaving her home in Chicago and going to various places, as well as managing her business affairs. We are convinced that the transfers were not occasioned by the apprehension of death. The same conclusion applies to the transfer of bonds made by Lucy M. Mills to Florence M. Spofford on or about April 8, 1916.

It is clear from the evidence that the transfer of the real estate referred to was not made to take effect at or after the death of Lucy M. Mills. The conveyance was absolute and vested Florence M. Spofford with an interest as a joint tenant in the real estate conveyed, entitling her to joint possession thereof and to one-half of the rents and income therefrom. Her possession and enjoyment of the estate conveyed to her was not in any way dependent on the death of Lucy M. Mills.

With respect to the transfer of bonds, however, a different situation exists. The record shows that, at about the same time the transfer of land was made, Lucy M. Mills also transferred to her

niece bonds of the value of $130,000. Whether they were transferred absolutely and *in praesenti*, so as to divest Lucy M. Mills of all interest in and control over them, the record does not show. Subsequent to the hearing counsel for the administratrix filed a motion to correct the transcript of the testimony, upon the ground that testimony that the bonds were transferred absolutely and without reservation of income had been given but not recorded by the reporter. This motion was set down for argument and upon consideration was denied, upon the ground that such testimony had not been given. The Commissioner included the value of the bonds in the gross estate of the decedent, upon the ground that they were not given to Florence M. Spofford absolutely and without reservation of income, but were intended to take effect in possession or enjoyment at or after the death of Lucy M. Mills. The burden is upon the taxpayer to show that the Commissioner erred in his determination. The only evidence presented is to the effect that on or about April 8, 1916, the bonds in question were transferred to Florence M. Spofford and that the value of these bonds was returned by the administratrix of the estate of Lucy M. Mills as subject to the Illinois inheritance tax. The Board is not justified upon the evidence in holding that the transfer of the bonds was not made to take effect at or after the death of Lucy M. Mills, or that it was a *bona fide* sale for a fair consideration in money or money's worth, and, therefore, the determination of the Commissioner with respect to the bonds must be approved.

The taxpayer urges, however, that even if the transfers involved in this appeal were made in contemplation of death, or to take effect in possession or enjoyment at or after the death of Lucy M. Mills, the value at the time of her death of the property so transferred should not be included as a part of her gross estate, for the reason that the retroactive provision of section 402 (c) of the Revenue Act of 1918 is in violation of the United States Constitution. This question has been passed upon several times by the inferior courts of the United States, and, while the decisions are in conflict, the weight of authority supports the conclusion that the provision of the statute is not subject to any constitutional infirmity. *Safe Deposit & Trust Co.* v. *Tait*, 295 Fed. 429; *Cleveland Trust Co.* v. *Routzahn*, 7 Fed. (2d) 483. See *Frew* v. *Bowers*, 9 Fed. (2d) 644; and *Reed* v. *Howbert*, 8 Fed. (2d) 641, holding constitutional the retroactive provisions of section 402 (c) of the Revenue Act of 1921. See also *Shwab* v. *Doyle*, 269 Fed. 321. In *Coolidge* v. *Nichols*, 4 Fed. (2d) 112, the District Court for Massachusetts held the retroactive provisions of section 402 (c) of the Revenue Act of 1918 unconstitutional. That case, however, involved a transfer made prior to the passage of the Revenue Act of 1918 and not in contem-

plation of death, by which the transferor completely divested herself of any interest in the property transferred.

We are of the opinion that the contention on this point is not well taken.

The last question for determination is what part, if any, of the value of the real estate held by Lucy M. Mills at the time of her death as joint tenant with Florence M. Spofford should be included in the gross estate of the decedent. The situation presented here is practically identical with that in *Kissam* v. *McElligott*, 280 Fed. 212, and in *Walker* v. *Grogan*, 283 Fed. 530, except that those cases arose under section 202 (c) of the Revenue Act of 1916. Each involved property held by husband and wife as joint tenants, the joint tenancy having been created prior to the enactment of the Revenue Act of 1916 out of property owned by the husband in severalty. The courts held that section 202 (c) of the Revenue Act of 1916, the wording of which is identical with section 402 (d) of the Revenue Act of 1918, was not retroactive, and that only one-half of the value of the property held jointly by the decedent and his wife should be included in the gross estate of the decedent subject to the estate tax. In *Kissam* v. *McElligott, supra*, the court said:

At the time the statute was passed Cornelia Kissam's interest belonged to her. In other words, the time of the transfer of the interest which Cornelia Kissam got from Jonas Kissam, in his lifetime, had passed. From the structure of the act, to say that the measure of the tax is the extent of the interest of both joint tenants, is, in effect, to say that a tax will be laid on the interest of Cornelia in respect of which Jonas had in his lifetime no longer neither title nor control.

*Kissam* v. *McElligott* was reversed by the Circuit Court of Appeals. 275 Fed. 545. The Supreme Court of the United States, however, in *Knox* v. *McElligott*, 258 U. S. 546, reversed the judgment of the Circuit Court of Appeals, held that the Act under which the tax was assessed was not retroactive in its operation, and quoted with approval the language above set forth from the opinion of the District Court. In the Revenue Act of 1918, Congress has inserted apt language, showing conclusively that section 402 (c) was intended to apply retroactively to transactions falling within the scope thereof. No language, however, was inserted in the Revenue Act of 1918 to indicate that section 402 (d) was intended to apply retroactively. "A statute should not be given a retrospective operation unless its words make that imperative." *Shwab* v. *Doyle*, 258 U. S. 529. Wherefore, we conclude that section 402 (d) of the Revenue Act of 1918 is not retroactive. In view of the decisions in *Walker* v. *Grogan, supra*, and *Kissam* v. *McElligott, supra*, we are of the opinion that only one-half of the value, at the time of the death of Lucy M. Mills, of the real estate held by her and Florence

M. Spofford as joint tenants should be included in the gross estate of Lucy M. Mills for the purposes of the tax.

*Order of redetermination will be entered on 10 days' notice, under Rule 50.*

SMITH dissents.