MARY ALLEN EMERY, EXECUTRIX, ESTATE OF JOHN T. EMERY, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 24416. Promulgated December 31, 1930.

*Robert L. Floyd, Esq., Charles S. Williston, Esq.,* and *Andrew Mitchell, Esq.,* for the petitioner.
*Edward C. Lake, Esq.,* for the respondent.

OPINION.

ARUNDELL: The first two questions are questions of fact. As to the stock in the Chicago Rawhide Mfg. Co., the evidence shows, and we have so found, that Mary Allen Emery was the owner of 189 shares which the respondent included in the decedent's gross estate. As to the preferred stock in Central Leather Co., there was much confusion and doubt in the testimony and we are unable to say that the respondent erred.

As to the issue of law raised on the third point, that is, the taxation of the property held in joint tenancy, section 402(d) of the Revenue Act of 1921, provides:

> That the value of the gross estate of the decedent shall be determined by including the value at the time of his death of all property, real or personal, tangible or intangible, wherever situated—
>
> \* \* \* \* \* \* \*
>
> (d) To the extent of the interest therein held jointly or as tenants in the entirety by the decedent and any other person, or deposited in banks or other institutions in their joint names and payable to either or the survivor, except such part thereof as may be shown to have originally belonged to such other person and never to have been received or acquired by the latter from the decedent for less than a fair consideration in money or money's worth: *Provided*, That where such property or any part thereof, or part of the consideration with which such property was acquired, is shown to have been at any time acquired by such other person from the decedent for less than a fair consideration in money or money's worth, there shall be excepted only such part of the value of such property as is proportionate to the consideration furnished by such other person: *Provided further*, That where any property has been acquired by gift, bequest, devise, or inheritance, as a tenancy in the entirety by the decedent and spouse, or where so acquired by the decedent and any other person as joint tenants and their interests are not otherwise specified or fixed by law, than to the extent of one-half of the value thereof.

Since the hearing in this proceeding, the Supreme Court has decided the case of *Tyler* v. *United States*, 281 U. S. 497, in which the constitutionality of the foregoing provision was upheld in a case involving tenants by the entireties, as well as the principle that there should be included in the gross estate of the decedent the entire value of property held as tenants by the entirety by the decedent and his spouse, where no part of such property originally belonged to, or was paid for by, the surviving spouse and where the estates were " created after the passing of the applicable Act." In view of this decision, we think it clear that in the case at bar there was an " enlargement of property rights " to the survivor through the death of the decedent in a sense which would require the inclusion in the gross estate of the decedent of at least one-half of the value of the property held by him and his spouse at his death as joint tenants. The property here involved was located in Illinois where the common law conception of joint tenancy prevails (*Mette* v. *Feltgen*, 148 Ill.

357; 36 N. E. 81, and *Deslauriers* v. *Senesac*, 331 Ill. 437; 163 N. E. 327), and one of the elements of such a tenancy is that while there is a " present estate in all the joint tenants, each being seized of the whole," (*Partridge* v. *Berliner*, 325 Ill. 253; 156 N. E. 352), each joint tenant has a legal right of severance which may be exercised at any time by either tenant prior to his death and thus defeat the right of the survivor in the interest of the other joint tenant. (Thompson on Real Property, vol. 2, p. 929, and authorities therein cited.) In *Tyler* v. *United States, supra,* the court said:

The question here, then, is not whether there has been, in the strict sense of that word, a " transfer " of the property by the death of the decedent, or a receipt of it by right of succession, but whether the death has brought into being or ripened for the survivor, property rights of such character as to make appropriate the imposition of a tax upon that result (which Congress may call a transfer tax, a death duty or anything else it sees fit), to be measured, in whole or in part, by the value of such rights.

Obviously, the death of one of two joint tenants thus becomes the " generating source " which would require the imposition of a tax on the estate of the decedent on account of the one-half of property held in joint tenancy which prior to the death of the decedent could have been severed by the decedent, but which at the death of the decedent ripens into complete ownership for the survivor and where, as was apparently true in the case at bar, there had been no contributions toward the acquisition of, or prior ownership in, such property by the survivor. Cf. *Chase National Bank* v. *United States*, 278 U. S. 327, and *Reinecke* v. *Northern Trust Co.*, 278 U. S. 339.

Our next question is whether the other one-half of the property held in joint tenancy which vested in the survivor upon the creation of the joint tenancy and as to which a right of severance existed on the part of the survivor may be included in the gross estate of the decedent when such tenancy was created prior to the passing of the applicable act under which the estate tax is being imposed. This can not be said to have been answered in *Tyler* v. *United States, supra,* for the reason that the estates there involved were not only tenancies by the entirety rather than joint tenancies, but more particularly were estates created *after* the passing of the applicable act. We are of the opinion, however, that our question has in effect been answered in *Knox* v. *McElligott*, 258 U. S. 546. The foregoing case dealt with a situation involving section 202 (c) of the Revenue Act of 1916, as amended by the Revenue Act of 1917, in which the provision with respect to the taxation of joint property, in so far as here material, was not unlike that contained in the corresponding provisions of the Revenue Acts of 1918 and 1921. The joint tenancy there in question was created prior to the effective date of the ap-

plicable act and the court held that this statute could not be given a retroactive effect and that the one-half of the jointly owned property which vested in the survivor upon the creation of the joint tenancy and as to which a right of severance existed on the part of the survivor throughout the existence of the joint tenancy should not be included in the gross estate of the decedent for estate-tax purposes. In so holding the court reversed the Circuit Court and quoted with approval from the District Court as shown in the following paragraphs:

But this contention was the alternative of the contention which plaintiffs in error also made, that the Act of September 8, 1916, as amended, was not intended to have retrospective operation. And this was the decision of the District Court, the court saying: "It is true section 201 provides that the tax is imposed upon the transfer of the net estate of 'every decedent dying after the passage of this act'; but the assumption must be that this relates to estates thereafter created and not to then existing property." And the court added: "At the time the statute was passed Cornelia Kissam's interest belonged to her."

The court further observed: "From the structure of the act to say that the measure of the tax is the extent of the interest of both joint tenants is, in effect, to say that a tax will be laid on the interest of Cornelia in respect of which Jonas had in his lifetime no longer either title or control." The court rejected that conclusion and denied to the acts of Congress retroactive operation. To this the Circuit Court of Appeals was opposed and reversed the judgment based upon it.

A distinguishing feature in the facts of the foregoing case from the case at bar might well be said to be that the joint tenancy was there created in 1912, when no act was in effect which provided for the taxation of the transfer of such property for estate-tax purposes, whereas in the case at bar the joint tenancy was created in 1920 when an act was in effect similar to that existing when the decedent died, but we are of the opinion that a distinction on this ground is not justified in view of the reasoning advanced in the decision. The language used was that at the time the applicable statute was passed " Cornelia Kissam's [the survivor's] interest belonged to her," and that a retroactive operation should not be given to the statute on account of an " interest of Cornelia [survivor] in respect of which Jonas [decedent] had in his lifetime no longer either title or control." The court further cited *Shwab* v. *Doyle*, 258 U. S. 529, as authority for its decision, in which the following statements are made with respect to the retroactive application of a somewhat similar statute:

If Congress, however, had the purpose assigned by the Commissioner, it should have declared it; when it had that purpose, it did declare it. In the Revenue Act of 1918 (Comp. St. Ann. Supp. 1919; § 6336 3/4c) it reenacted section 202 of the Act of September 8, 1916, and provided that the transfer or trust should be taxed, whether "made or created before or after the passage of" the act. And we cannot accept the explanation that this was an elucidation of the act of 1916, and not an addition to, as averred by defendant, but regard the act of 1918 rather as a declaration of a new purpose; not the

explanation of an old one. But, granting the contention of the defendant has plausibility, it is to be remembered that we are dealing with a tax measure, and whatever doubts exist must be resolved against it.

The foregoing comment is likewise pertinent in the situation before us, for the reason that the provision with which we are concerned does not expressly make it retroactive, though retroactive provisions were inserted in the Revenue Acts of 1924 and 1926 (section 302(h)).

The position which we have outlined above is also consistent with the interpretation formerly given to the provision in question by the Commissioner in Treasury Decision 3951 (amending article 23, Regulations 63, under the Revenue Act of 1921, and issued on December 29, 1926) which reads in part as follows:

*Property held jointly or as tenants by the entirety.*—The statute provides for the inclusion in the gross estate of interests held jointly by the decedent and any other person or persons and of estates by the entirety. This provision applies only to a joint tenancy, or a tenancy by the entirety, created subsequent to the passage of the Revenue Act in force and effect at the time of the decedent's death. * * *

However, apparently on the theory that *Tyler* v. *United States*, *supra*, overruled *Knox* v. *McElligott*, *supra*, the foregoing Treasury Decision was amended on July 3, 1930, by Treasury Decision 4293 by striking therefrom the second sentence thereof quoted above. For reasons already stated, we see no inconsistency between the two cases.

In view of the foregoing, we are of the opinion that since the joint tenancy was created prior to the act in effect when the decedent died and since the applicable act is not made specifically retroactive, only one-half of the value of property held jointly by the decedent and his wife should be included in the gross estate of the decedent subject to the estate tax. See also *Walker* v. *Grogan*, 283 Fed. 530, and *Hannah M. Spofford, Administratrix*, 3 B. T. A. 1016.

Reviewed by the Board.

*Judgment will be entered under Rule 50.*

---

BLACK, dissenting: I do not agree with the majority opinion in this proceeding.

Articles 23 and 24 of the Commissioner's Regulations 63, Revenue Act of 1921, read as follows:

ART. 23. *Property held jointly or as tenants by the entirety.*—The statute provides for the inclusion in the gross estate of interests held jointly by the decedent and any other person or persons, and of estates by the entirety. This class of property includes all interests, whether in real or personal property, where the survivor takes the entire property by right of survivorship, and consequently the decedent's interest therein forms no part of his estate for purposes of administration. It does not include interests held as tenants in com-

mon, where the interest of each tenant passes free from any right of survivorship.

The following are examples of this class: Real estate held by joint tenants; real estate held by husband and wife (known as an estate by the entirety); money deposited in a bank or trust company in the joint names of the decedent and another and payable to either or the survivor; and, in general, all securities and other personal property, where the title thereto was vested in the decedent and one or more other persons, subject to the right of survivorship.

ART. 24. *Taxable portion.*—The entire value of such property is prima facie a part of the decendent's gross estate, but as it is not the intent of the statute that there should be so included a greater part or proportion thereof than is represented by an outlay of funds, which, in the first instance, were decedent's own, or more than a fractional part equal to that of the other joint owner where neither had parted with any consideration in its acquirements, facts, which in a given case bring it within any one of the exceptions enumerated in the statute, may be submitted by the executor.

Whether the value of the entire property, or only a part, or none of it, enters into the make-up of the gross estate, depends upon the following considerations; (1) So much of the property (whether the whole, or a part thereof) as originally. belonged to the other joint owner, and which at no time in the past had been received or acquired by the latter from the decedent for less than a fair consideration in money or money's worth, forms no part of the decedent's gross estate. (2) Where the facts are otherwise the same as in (1), but the decedent paid to such other joint owner a consideration for the interest by him (the decedent) acquired in the property, then such portion of the value of the property, proportionate to the consideration so paid, constitutes a part of the gross estate. (3) Where the property, or a part thereof, or a part of the consideration wherewith it was acquired, had at any time been acquired by the other joint owner from the decedent as a gift, or for less than a fair consideration in money or money's worth, then such portion of the value of the entire property, proportionate to the consideration, if any, which in the first instance was paid from such other joint owner's own funds, forms no part of the gross estate. (4) Where the property was acquired by the decedent and his or her surviving spouse as tenants in the entirety by gift, will, or inheritance, then but one-half of the value of the property becomes a part of the gross estate. (5) Where acquired by the decedent and the other joint owner as joint tenants by gift, will, or inheritance, and their interests are not otherwise specified, or fixed by law, then one-half only of the value of the property is a part of the gross estate; or, where so acquired by the decedent and two or more persons, and the interests of the several joint tenants are not otherwise determinable, then the decedent and the other joint tenants surviving him shall each be deemed the owner of an equal fractional part, and the value of one only of such fractional parts is to be included in the gross estate.

I think the foregoing regulations are correctly interpretative of the meaning of section 402 (d) of the Revenue Act of 1921.

The interest which Mary Allen Emery owned in the joint tenancy does not come within any of the foregoing exceptions and hence the Commissioner properly included the entire value of the property as a part of the gross estate of the decedent.

Under the common law doctrine of joint tenancy, each tenant is deemed to be equally seized of the whole, but with power to convey an equal share. This entirety of interest, but with power of

alienation in equal shares, is expressed by the ancient law maxim that every joint tenant is seized *per my et per tout*, which technically considered imports that, for the purposes of tenure and survivorship, each is the holder of the whole, but for purposes of alienation, each has only an equal share. So long as the tenancy is not destroyed by sale or partition, this entirety of interest continues, and upon the death of one tenant he can transmit nothing to his heirs, but leaves his cotenants seized as before of the whole, but thereafter with no one to share it with him. This *jus accrescendi*, or the right of survivorship, is the important incident of joint tenancies which more than any other serves to distinguish them from tenancies in common. The event which brings it into operation is death and the result is the enlargement of the property rights of the survivor from an estate subject to the restrictions imposed by law on joint tenancies, to an absolute estate in severalty. It is the incident of death which brings the *jus accrescendi* into operation and it is that transfer which the statute taxes. *Tyler* v. *United States*, 281 U. S. 497; *J. H. Gwinn*, 20 B. T. A. 1052.

While it is true that each tenant was entitled at will to transfer separately an equal share in the property or to partition it between them, power of alienation is by no means the only important incident of absolute ownership. Equally important is the unrestricted power to dispose of property by will, or, in the absence of testamentary disposition, to have it descend to one's heirs. These powers Mary Allen Emery did not have prior to the decedent's death. It was the termination of this possibility of survivorship by the event of the decedent's death, together with the resultant acquisition of the unrestricted power of disposition at death, which makes valid the imposition of the tax. *Chase National Bank* v. *United States*, 278 U. S. 327; *Tyler* v. *United States, supra*.

The majority opinion cites in support of the conclusion reached by it *Knox* v. *McElligott*, 258 U. S. 546, but I do not think that case is in point. In that case the joint tenancy was created in 1912 before Congress had enacted an estate tax and the main contention of plaintiffs in error was that to apply the estate-tax provisions of the Revenue Act of 1916 to joint tenancies created before there was any estate tax would be to give them a retroactive application without Congress having clearly expressed such an intention. The Supreme Court sustained this contention and held that only one-half of the property was includable as a part of decedent's estate, but the situation in the instant proceeding is entirely different from the *Knox* v. *McElligott* case, *supra*.

The joint tenancy involved in this proceeding was created April 1, 1920, at a time when the Revenue Act of 1918 was in full force and effect. The rates at which estates are taxable are substantially the

same in the 1918 Act as in the 1921 Act. Section 402 (d), relating to property held in joint tenancies or tenancies by the entirety, is substantially the same in both acts. Certainly it would not be contended that if the decedent John T. Emery had died December 25, 1920, instead of December 25, 1921, his estate would not have been taxed under the Revenue Act of 1918 on the full value of the property held by himself and wife as joint tenants. The mere fact that his death was postponed until December 25, 1921, a date transpiring after the enactment of the Revenue Act of 1921, would not be occasion enough to change the character of the inventory of his estate and cause the inclusion of only one-half of the property held by himself and his wife as joint tenants, instead of the whole of such property. To give *Knox* v. *McElligott, supra,* an interpretation of that kind I think goes beyond what was meant by the Supreme Court in that decision. I think *Tyler* v. *United States, supra,* is decisive of the question involved in this proceeding and that the Commissioner did not err in including the entire value of the property held in joint tenancy by the decedent and·his wife as a part of the gross estate of decedent.

Love agrees with this dissent.