# O'SHAUGHNESSY v. COMMISSIONER OF INTERNAL REVENUE.

## No. 5926.

Circuit Court of Appeals, Sixth Circuit.

June 27, 1932.

Walter E. Barton, of Washington, D. C. (Joseph P. Tumulty and Timothy T. Ansberry, both of Washington, D. C., on the brief), for petitioner.

John MacC. Hudson, of Washington, D. C. (G. A. Youngquist, Asst. Atty. Gen., and Sewall Key, C. M. Charest, and Prew Savoy, all of Washington, D. C., on the brief), for respondent.

Before HICKS, HICKENLOOPER, and SIMONS, Circuit Judges.

SIMONS, Circuit Judge.

Petitioner seeks review of a decision of the Board of Tax Appeals affirming respondent's determination of a deficiency of $21,-148.51 in federal estate tax under the Revenue Act of 1926, §§ 301 (a), 302, 302 (e), 302 (h) (26 USCA §§ 1092, 1094 (e, h), and the applicable regulations. Petitioner is the executrix of Peter O'Shaughnessy, who died August 1, 1926. On August 28, 1919, O'Shaughnessy and wife conveyed certain real estate to one Cloud who on the same day conveyed it to O'Shaughnessy and his son, Victor, as joint tenants. Two years later O'Shaughnessy conveyed his interest in the property to Victor, who immediately deeded the property to O'Shaughnessy and his daughter Rita, the present petitioner, as joint tenants, with right of survivorship. The question presented is whether the value of the entire property is taxable as part of O'Shaughnessy's gross estate, or as now claimed by the petitioner, only half of it is subject to the tax.

The Revenue Act of 1926 was in force at the time of the death of the decedent, but not at the time the joint tenancy was created. Section 301 (a) of the act imposes taxes upon the transfer of the net estate of every decedent dying after its enactment. Section 302, in so far as applicable, reads as follows:

Section 302. "The value of the gross estate of the decedent shall be determined by including the value at the time of his death of all property, real or personal, tangible or intangible, wherever situated * * *

"(e) To the extent of the interest therein held as joint tenants by the decedent and any other person, or as tenants by the entirety by the decedent and spouse, or depos-

ited, with any person carrying on the banking business, in their joint names and payable to either or the survivor, *except such part thereof as may be shown to have originally belonged to such other person and never to have been received or acquired by the latter from the decedent for less than an adequate and full consideration in money or money's worth:* Provided, That where such property or any part thereof, or part of the consideration with which such property was acquired, is shown to have been at any time acquired by such other person from the decedent for less than an adequate and full consideration in money or money's worth, there shall be excepted only such part of the value of such property as is proportionate to the consideration furnished by such other person: Provided further, That where any property has been acquired by gift, bequest, devise, or inheritance, as a tenancy by the entirety by the decedent and spouse, then to the extent of one-half of the value thereof, or, where so acquired by the decedent and any other person as joint tenants and their interests are not otherwise specified or fixed by law, then to the extent of the value of a fractional part to be determined by dividing the value of the property by the number of joint tenants; * * *

"(h) Except as otherwise specifically provided therein subdivisions (b), (c), (d), (e), (f), and (g) of this section shall apply to the transfers, trusts, estates, interests, rights, powers, and relinquishment of powers, as severally enumerated and described therein, whether made, created, arising, existing, exercised, or relinquished before or after February 26, 1926 [the enactment of this Act]."

The Statutes of the State of Kentucky, sections 2348, 2349, provide that joint tenants may be compelled to make partition, and that when a joint tenant dies his part of the joint estate shall descend to his heirs, or pass by devise, except that this shall not apply when it manifestly appears from the tenor of the instrument that it was intended that the part of the one dying should belong to the other.

The respondent Commissioner included the entire value of the property held by the petitioner and her father, Peter, as joint tenants in the gross estate of the deceased. The petitioner at first contended that no part thereof should be included in the gross estate. This contention has been abandoned, and it is now asserted that only one half of the value of the jointly owned property was taxable under the cited sections, and that if it were intended to include all the jointly owned real estate the quoted sections were repugnant to the Fifth Amendment to the Constitution in that they were so arbitrary and capricious as to deprive the estate of its property without due process of law, and in that the tax is an unapportioned direct tax.

We treat the petitioner's interest in the joint tenancy as though it were acquired from her father without the payment of consideration. It is clear that the intermediate grantors were merely nominal title holders for the purpose of effecting the joint tenancy, and the transfers were controlled by Peter O'Shaughnessy. The Board so found, and there is nothing in the record to indicate the contrary. Nor is there anything in the record to show that the property at any prior time had belonged to the petitioner individually, that she had contributed any portion of the consideration for its purchase, or that the property had been acquired by the joint tenants by gift, bequest, devise, or inheritance. The case, therefore, does not come within any of the exceptions to section 302 (e).

The sections of the 1926 act here in question are almost identical with the sections of the 1916 act considered by the United States Supreme Court in Tyler v. United States, 281 U. S. 497, 50 S. Ct. 356, 359, 74 L. Ed. 991, 69 A. L. R. 758. The court there held the provision of the 1916 act explicit, and the intent of Congress thereby to impose the challenged tax not open to doubt. This being so, there is no occasion to interpret the language of section 302 (e) as urged by the petitioner by substituting the disjunctive "or" for the conjunctive "and" in the exception which reads: "Except such part thereof as may be shown to have originally belonged to such other person and never to have been received or acquired by the latter from the decedent, etc." The remaining question, therefore, involves the constitutional validity of the sections, and they are attacked on the same grounds as were similar provisions of the 1916 act in the Tyler Case.

The Tyler Case sustained the constitutionality of the provision which included an estate by entirety within the gross estate of the decedent, against identical challenge to its validity. It did not decide whether a joint tenancy with right of survivorship was equally within the power of Congress to include within the gross estate. While there are differences between the incidents of estates by the entirety and joint tenancies,

there are likewise important similarities. The argument in the Tyler Case is equally applicable to both. While a joint tenant, unlike a tenant by the entirety, may during the tenancy dispose of his interest, in which event the tenancy, under the Kentucky law, is dissolved, yet one joint tenant upon the death of the other, for the first time becomes entitled to exclusive possession, use, and enjoyment of the whole property. For the first time he ceases to hold it subject to the disabilities and qualifications imposed by the grant and by law. Then and then only he acquires the power not theretofore possessed to dispose of the property by will. The court in the Tyler Case said: "The question here, then, is, not whether there has been, in the strict sense of that word, a 'transfer' of the property by the death of the decedent, or a receipt of it by right of succession, but whether the *death has brought into being or ripened for the survivor, property rights* of such character as to make appropriate the imposition of a tax upon that result (which Congress may call a transfer tax, a death duty or anything else it sees fit), to be measured, in whole or in part, by the value of such rights."

When the instant case was briefed and orally argued, the Supreme Court had not yet delivered its opinion in D. B. Heiner, Collector, v. John H. Donnan et al., 285 U. S. 312, 52 S. Ct. 358, 76 L. Ed. 772, announced March 21, 1932. There the court distinguishes gifts inter vivos, which are begun and completed wholly by and between the living, and therefore taxable as gifts but not subject to any form of death duties, from transfers wherein complete ownership, together with all its incidents, are brought into being or ripened for the donee by the death of the donor. The latter are subject to death taxes and the former are not, and the Tyler Case is quoted as authority. If the petitioner's undivided interest in the joint tenancy was not subject to the death tax it is only because it was a completed gift inter vivos, and left no right to be acquired by her and no accretion to her undivided interest in the property to come by reason and because of the death of decedent. This is obviously as indicated not the case. As the court said further in the Tyler Case: "A practical mind, considering results, would have some difficulty in accepting the conclusion that the death of one of the tenants in each of these cases did not have the effect of passing to the survivor substantial rights, in respect of the property, theretofore never enjoyed by such survivor."

One other contention remains to be noted. The act became effective after the creation of the joint tenancy, but before the death of the decedent. By sections 301 (a) and 302 (h) the act is made retroactive. The power of the Congress to do so is challenged under the authority of Knox v. McElligott, 258 U. S. 546, 42 S. Ct. 396, 66 L. Ed. 760. The case is not authority for the contention, as will be readily seen by an examination of Shwab v. Doyle, 258 U. S. 529, 42 S. Ct. 391, 392, 66 L. Ed. 747, 26 A. L. R. 1454, decided at the same term and therein cited. The court there held the 1916 law not retroactive because there was in it no declaration of retroactivity "clear, strong, and imperative," which is the condition expressed in United States v. Heth, 3 Cranch, 399, 2 L. Ed. 479, and U. S. v. Burr, 159 U. S. 78, 15 S. Ct. 1002, 40 L. Ed. 82. The 1926 act is not within the condemnation of the relied upon cases, because the retroactive declaration is sufficiently clear, strong, and imperative. In view of what we have said, the order of the Board of Tax Appeals must be affirmed.